36 P.3d 772

**In re JOHN M.**

**No. 1 CA–JV 01–0091.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 24, 2001.

Richard M. Romley, Maricopa County Attorney, by Jeffrey A. Zick, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender, by James M. Likos, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

TIMMER, Presiding Judge.

¶ 1 John M. appeals his adjudication of delinquency for disorderly conduct in violation of Arizona Revised Statutes ("A.R.S.") § 13–2904(A)(3) (1989). He argues that the juvenile court erred in its ruling because (i) his act in throwing a soda can at one victim did not constitute a "gesture" under A.R.S. § 13–2904(A)(3), (ii) the evidence was insufficient to support a finding that he yelled

racial slurs at the victims, and (iii) even assuming that he shouted the insults, his speech was constitutionally protected and could not, therefore, form the basis for his delinquency adjudication. For the reasons that follow, we reject John's arguments and affirm.

## BACKGROUND

¶ 2 On August 31, 2000, Jennifer B., an African–American woman, was waiting at a bus stop when a large, older model, dark colored car carrying four white males passed. As the vehicle passed, the front-seat passenger threw a partially full can of Mountain Dew at Jennifer, striking her in the chest before it struck the ground and rolled into the gutter. Jennifer also heard someone in the car yell "nigger" in a "hurried, angry" voice. Not surprisingly, Jennifer felt "violated" by this conduct. She immediately went home and told her roommate, Marla J., what had transpired and then called the police to report the incident. Marla grabbed a camera and walked to the bus stop to retrieve the can and photograph the scene.

¶ 3 As Marla, who is also African–American, neared the bus stop, an older black car passed by and the passenger leaned out of the window and yelled "fuck you, you god damn nigger." The car then turned into and stopped in the parking lot of a restaurant located across the street from the bus stop. Marla retrieved the can previously thrown at Jennifer, photographed the bus stop, and then walked across the street to the restaurant and photographed the car, including its license plate. Marla next observed the vehicle's occupants in the restaurant, one of whom she later identified as John, and took pictures of them. John and his companions eventually noticed Marla taking pictures, and, as Marla left the parking lot, one companion yelled after her to return and explain why she was taking pictures. Marla ran away to avoid a possible confrontation.

¶ 4 The police reviewed Marla's picture of the car's license plate and determined that the car belonged to the family of John's friend, Frank. Detective Oliver spoke with Frank and his father and was referred to

John and another boy. The detective subsequently interviewed John in the presence of John's father. After viewing the pictures taken by Marla, John's father identified the occupants of the car as John and three of his friends.

¶ 5 John related that he remembered Marla taking pictures at the restaurant and then described the bus stop area. He stated that prior to stopping at the restaurant, he and his friends had been driving around with him sitting in the front passenger seat. Although he admitted seeing an African–American woman seated at the bus stop while he and his friends were in the car, he denied yelling anything at her or throwing a can at her.

¶ 6 The State filed a delinquency petition against John alleging that he had disturbed the peace or quiet of a neighborhood, family, or person by using abusive or offensive language or gestures in a manner likely to provoke immediate physical retaliation, in violation of A.R.S. § 13–2904. After holding an adjudication hearing, the juvenile court found that John had yelled racial slurs at Jennifer and Marla and had thrown the Mountain Dew can at Jennifer and that these actions would have likely provoked a response. The court then found John delinquent for disturbing the peace.

## STANDARD OF REVIEW

¶ 7 The interpretation of A.R.S. § 13–2904(A)(3) and whether John's words were constitutionally protected speech are questions of law, and we therefore review the juvenile court's rulings on these issues de novo. *State v. Bomar*, 199 Ariz. 472, 475, ¶ 5, 19 P.3d 613, 616 (App.2001). However, we will not re-weigh the evidence, and we will only reverse on the grounds of insufficient evidence if there is a complete absence of probative facts to support the judgment or if the judgment is contrary to any substantial evidence. *State v. Sanders*, 118 Ariz. 192, 196, 575 P.2d 822, 826 (App.1978). Finally, we view the evidence in the light most favorable to sustaining the adjudication. *In re Julio L.*, 197 Ariz. 1, 2–3, ¶ 6, 3 P.3d 383, 384–85 (2000).

## DISCUSSION

### A. Meaning of "gesture" under § 13–2904(A)(3)

¶ 8 John first argues that the juvenile court erred in its ruling because the act of throwing the Mountain Dew can was not a "gesture" within the meaning of § 13–2904(A)(3). That statute provides as follows:

A. A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:

. . . .

3. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person; . . . .

¶ 9 To determine the meaning of § 13–2904(A)(3), we look first to its language, *Calmat of Ariz. v. State ex rel. Miller*, 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993), and will ascribe plain meaning to its terms unless they are ambiguous. *Rineer v. Leonardo*, 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). Because the legislature has not defined the term "gesture," we refer to established and widely used dictionaries to glean its meaning. *State v. Wise*, 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983).

¶ 10 John relies on Webster's Ninth New Collegiate Dictionary to support his contention that a "gesture" is limited to a bodily motion and does not extend to the act of throwing a can. That dictionary defines "gesture," in relevant part, as "a movement usu[ally] of the body or limbs that expresses or emphasizes an idea, sentiment, or attitude." Webster's Ninth New Collegiate Dictionary 515 (1984). But use of the modifier "usually" indicates that this definition does not limit a "gesture" to "a movement . . . of the body or limbs" as John suggests. Moreover, other reference sources provide a more expansive definition for the term. *See* Webster's New Universal Unabridged Dictionary 768 (2d ed. 1986) ("Gesture" means "any action, statement, or characteristic of utterance intended to convey a state of mind, intention, etc."); Roget's II 444 (1988) (A "gesture" is "[s]omething that takes the place

of words in communicating a thought or feeling").

¶ 11 We deduce from these definitions that the operative component of the term "gesture" is a physical act intended to communicate a thought or feeling. Thus, throwing a glass of water in another person's face to convey a message of disdain or disgust is an example of a gesture. Tearing up a bank check in the face of another may be a gesture conveying the thought that money will not resolve a dispute. Throwing roses at the feet of an on-stage dancer during a curtain call communicates admiration for a performance and exemplifies a positive gesture.

¶ 12 We further note that applying this definition of "gesture" in § 13–2904(A)(3) better serves the purpose of that provision. A.R.S. § 1–211(B) (1995) ("Statutes shall be liberally construed to effect their objects and to promote justice."). The legislature clearly drafted § 13–2904(A)(3) to proscribe abusive or offensive communication likely to provoke immediate physical retaliation by the listener. As previously explained, *see supra* ¶ 11, a physical act that involves an object can constitute communication. We discern no reason why the legislature would intend to exclude such communication from the reach of § 13–2904(A)(3) if it is also "abusive or offensive" and presented "in a manner likely to provoke immediate physical retaliation." A.R.S. § 13–2904(A)(3). We decline to craft such a limitation by narrowly defining the term "gesture" as John suggests.

¶ 13 In the present case, the evidence supported the juvenile court's ruling that John used an abusive or offensive gesture by throwing the Mountain Dew can at Jennifer. Coupled with the angry and abhorrent shout of "nigger" at an African–American woman peacefully minding her business, John's act clearly communicated racial hatred and disdain likely to provoke immediate physical retaliation.

### B. Sufficiency of the evidence

¶ 14 John next argues that the juvenile court erred because sufficient evidence did not support its finding that John yelled racial slurs at Jennifer and Marla.[1] Insufficient evidence existed to support the ruling only if there was a complete absence of probative facts to support the conclusion. *State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988).

¶ 15 Jennifer testified that the front seat passenger threw the soda can, but that she could not tell who yelled the racial slur. John admitted that he was seated in the front passenger seat at the time the car passed by Jennifer and that his fingerprints would be found on the can, but he denied shouting anything at Jennifer. The State argues that John's seating position, coupled with the fact that the front passenger seat window was open and the back seat windows were closed in the photographs later taken by Marla, support a finding that John shouted the slur at Jennifer. We disagree.

¶ 16 Jennifer testified that she "[had] no way of knowing who yelled [the slur]." The juvenile court was in the same position. The evidence before the court only proved that one of the car's occupants yelled at Jennifer. None of the evidence singled out John as the culprit. Indeed, John's companions could have shouted through John's window. Or the back seat window could have been down at the time the car drove past Jennifer but rolled up by the time Marla photographed the car. Jennifer was not asked and did not specify whether the back seat window was open or closed at the time of the incident. In light of the lack of evidence linking John to the slur hurled at Jennifer, we agree with John that insufficient evidence supported the court's finding on this point.

¶ 17 However, we disagree with John that the juvenile court lacked sufficient evidence to support its finding that he had yelled slurs at Marla. Marla testified that

---

1. John states that it is unclear whether the charge against him involves the incident with Marla. Our review of the record reveals that the charge encompassed John's actions toward Marla. The petition charged John with disorderly conduct for conduct that occurred on August 31, 2000 and did not limit the charge to the encounter with Jennifer. Moreover, the State presented evidence regarding the incident involving Marla, and the juvenile court based its delinquency adjudication, in part, on slurs yelled at the "victims."

the front seat passenger had hung out of the window of the car and shouted the racial slur at her. John admitted that he was seated in the front passenger seat while riding around with his companions. Approximately one half hour transpired between the incidents involving Jennifer and Marla, and no evidence suggested that the car had stopped or that the passengers had changed their seating arrangements during this period. This evidence was sufficient to support the court's conclusion that John was the front seat passenger who shouted the insults at Marla.

¶ 18 In summary, we conclude that the evidence did not sufficiently support the juvenile court's finding that John yelled a racial slur at Jennifer. We further decide, however, that the evidence sufficiently supported the court's finding that John threw a can of Mountain Dew at Jennifer and shouted racial slurs at Marla. This evidence amply supported an adjudication for disorderly conduct pursuant to § 13–2904(A)(3).

### C. "Fighting words"

¶ 19 John M. finally argues that even if he shouted offensive words at Jennifer and Marla, he did not violate § 13–2904(A)(3) because his speech was protected by the First and Fourteenth Amendments to the United States Constitution. *See Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (holding offensive speech may be protected under the First Amendment). John correctly notes that § 13–2904(A)(3) does not proscribe constitutionally protected speech, *see State v. Brahy,* 22 Ariz. App. 524, 525, 529 P.2d 236, 237 (1974) (discussing A.R.S. § 13–371, the former version of § 13–2904), but only prohibits "fighting words," which are not so protected. *In re Louise C.,* 197 Ariz. 84, 86, ¶ 7, 3 P.3d 1004, 1006 (App.1999). "Fighting words are those 'inherently likely to provoke violent reaction' when addressed to the 'ordinary citizen.'" *Id.* (quoting *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)). John contends, without explanation, that his words fall outside this definition, and we must therefore reverse his adjudication. In light of our conclusion that insufficient evidence supported a finding that John yelled the slur at Jennifer, we scrutinize only the offensive words shouted at Marla.

¶ 20 Unprovoked, John leaned out of a car window and screamed at an African–American woman, "fuck you, you god damn nigger," before the car pulled into a nearby restaurant parking lot and stopped. We agree with the State that few words convey such an inflammatory message of racial hatred and bigotry as the term "nigger." According to Webster's New World Dictionary, the term is "generally regarded as virtually taboo because of the legacy of racial hatred that underlies the history of its use among whites, and its continuing use among a minority as a viciously hostile epithet." Webster's New World Dictionary, Third College Edition 916 (1988). Consequently, John's direction of the word "nigger" to Marla, an African–American woman, constituted a personal attack on her that was likely to provoke a violent reaction when addressed to an ordinary citizen of African–American descent. *In re Spivey,* 345 N.C. 404, 480 S.E.2d 693, 699 (1997) ("No fact is more generally known than that a white man who calls a black man a nigger within his hearing will hurt and anger the black man and often provoke him to confront the white man and retaliate."); *see also Bailey v. State,* 334 Ark. 43, 972 S.W.2d 239, 245 (1998) (recognizing defendant uttered "fighting words" by telling an African–American police officer, "Fuck you, nigger").

¶ 21 John's use of the racial slur, coupled with epithets that sharpened the hostility of the message, differentiates the incident from the situation in *Louise C.,* cited by John. In that case, a student told her principal in his office, "Fuck this. I don't have to take this shit.... Fuck you. I don't have to do what you tell me." *Louise C.,* 197 Ariz. at 85, ¶ 2, 3 P.3d at 1005. We decided that the juvenile's outburst in that case was offensive but was not likely to provoke an ordinary citizen to a violent reaction. *Id.* at 86, ¶ 8, 3 P.3d at 1006. By contrast, John's words, rather than simply conveying an idea or emotion in the midst of a discussion, constituted an unprovoked, personal attack on an innocent bystander. We therefore find *Louise C.* distinguishable.

¶ 22 Based on the foregoing, we hold that John's words to Marla were "fighting words" and thus unprotected by the Constitution. The juvenile court, therefore, did not err by adjudicating John delinquent based on his conduct toward Marla.

## CONCLUSION

¶ 23 For the foregoing reasons, we hold that (1) John's act in throwing a soda can at Jennifer constitutes a "gesture" under § 13–2904(A)(3); (2) the evidence sufficiently supports a finding that he yelled a racial slur at Marla but does not support a finding that he shouted a slur at Jennifer; and (3) John's language was not constitutionally protected and could form the basis for his delinquency adjudication. We therefore affirm.

CONCURRING: JOHN C. GEMMILL, Judge, NOEL FIDEL, Judge.