81 P.3d 334

**In re UBALDO B.**

**No. 1 CA–JV 03–0123.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 23, 2003.

---

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Richard M. Romley, Maricopa County Attorney By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Suzanne W. Sanchez, Phoenix, Attorneys for Appellant.

## OPINION

SNOW, Judge.

¶1 Ubaldo B. appeals his adjudication of delinquency and the resulting disposition. For the following reasons, we reverse the juvenile court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2 On April 25, 2003, a petition was filed in the juvenile court alleging that Ubaldo: (1) committed trespass when he "knowingly entered or remained unlawfully on the real property of Sun Place Apartments, after a reasonable request to leave by the owner or any other person having lawful control over the property"; and (2) committed criminal damage when he "recklessly drew or inscribed a message, slogan, sign, or symbol on interior wall(s) of a private building, structure, or surface, without permission of the owner, Sun Place Apartments, causing damage in an amount of $250 or less."

¶3 An adjudication hearing on the two charges was held on May 27, 2003. At the hearing, Elizabeth Gaddis, an employee of Sun Place Apartments, testified that she received a complaint from a tenant regarding a situation at one of the apartments. Upon investigation she observed Ubaldo, through an open apartment door, sitting inside the apartment with a can of spray paint in his hand.[1] A nearby wall had a black "smudge" on it that Gaddis identified as paint. She further testified that paint was present in the bedroom as well, and that there was a "strong odor of paint" emanating from the apartment. Gaddis returned to the office and called the police, then went back to the apartment to await their arrival.

¶4 According to the testimony of the investigating officer, he could smell "fresh spray paint fumes" as he approached the apartment. After entering the apartment, he observed that almost the entire east wall was covered with a "grayish" shade of spray paint. He found a can of identical spray paint in a garbage can in the apartment's kitchen.

¶5 At the close of the State's evidence, Ubaldo's counsel moved for a directed verdict on both counts, arguing there was no evidence that Ubaldo was in the apartment without permission or that Ubaldo had painted the wall. In addition, defense counsel argued that Ubaldo was charged with painting "a message, slogan, sign or symbol" on the wall pursuant to Arizona Revised Statutes ("A.R.S.") section 13–1602(A)(5) (2001), and that the State had not presented any evidence that any of the paint identified by Gaddis constituted a message, slogan, sign or symbol. The juvenile court granted a direct-

---

1. According to the apartment's lease, Ubaldo was not an authorized occupant. The person whose name appears on the lease was not present, although several other individuals were with Ubaldo in the apartment.

ed verdict on the trespass count but denied the motion on the criminal damage count.

¶ 6 In closing arguments, counsel reiterated their respective positions, whereupon the following exchange occurred:

THE COURT: ... is it your position that under 1602(a)(5) the drawing or inscribing a message, slogan, sign or symbol means who? [sic] It isn't a message. I can't make out any letters, any specific words. It doesn't appear to be a slogan. Why could this not be a sign or a symbol of some sort?

[DEFENSE COUNSEL]: There is none of that, of it being any—being any kind of sign or symbol.

The manager just testified that she saw paint on the wall but she didn't testify as to what it was. It doesn't appear to be anything other than just—

THE COURT: Are you saying that either police officer[s] or victims represent it as meaning something in particular for it to be a sign or symbol?

[DEFENSE COUNSEL]: Well, I think there has to be something to appear that it was a sign or symbol. As I said it does not even appear to be paint.... I don't know what that is. We can't tell by looking at it what that is. And I think for the State to allege it is a sign or symbol they have to have some kind of evidence or testimony from someone as to what it is. It appears just to be some kind of mark on the wall.

THE COURT: So if I go to your house and I spray paint, some sort of swiggle [sic] on the outer wall of your house and I'm charged with drawing or inscribing a message, slogan, sign or symbol on your house, there has to be testimony at my trial from the State that that swiggle [sic] means something?

[DEFENSE COUNSEL]: If that's how they want to charge it, as graffiti, they have to show that.

If they want to show testimony, just damage to the wall, they could charge it under a different subsection.

The way they have charged it they have not proven that's what is on that wall or my client has anything to do with it.

The State responded that "if that's [defense counsel's] argument we would have to bring in experts' testimony on every single graffiti case. So to say that, yes, it is a sign, it is what it means, a sign, symbol, what it means, I don't think that's the purpose of the statute."

¶ 7 After this discussion concluded, the court found that the State had proven the criminal damage allegations in count two of the petition beyond a reasonable doubt and adjudicated Ubaldo delinquent. At the disposition hearing on July 11, 2003, the court placed Ubaldo on intensive probation and ordered him to participate in a vocational rehabilitation program, substance abuse counseling, and weekly drug testing. Ubaldo was also required to pay $420 in restitution to Sun Place Apartments. He timely appealed, and we have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1) (2003) and Arizona Rule of Procedure for the Juvenile Court 88.

## ANALYSIS

■ ¶ 8 On appeal, Ubaldo argues that there is insufficient evidence to support his delinquency adjudication pursuant to A.R.S. § 13–1602(A)(5).[2] When reviewing the adjudication, "we will not re-weigh the evidence, and we will only reverse on the grounds of insufficient evidence if there is a complete absence of probative facts to support the judgment or if the judgment is contrary to any substantial evidence." *In re John M.*, 201 Ariz. 424, 426, ¶ 7, 36 P.3d 772, 774 (App.2001) (citation omitted). In addition, we view the evidence in the light most favorable to sustaining the adjudication. *Id.* (citation omitted).

¶ 9 Section 13–1602(A)(5) reads, in relevant part:

A. A person commits criminal damage by recklessly:

. . . .

**2.** Ubaldo further argues that the trial court erred in determining the restitution award ordered in this case. Based upon our resolution of the first issue, we do not consider this second issue.

5. *Drawing or inscribing a message, slogan, sign or symbol* that is made on any public or private building, structure or surface, except the ground, and that is made without permission of the owner.

A.R.S. § 13–1602(A)(5) (emphasis added). Ubaldo contends that the State failed to present any evidence that the marks Ubaldo was accused of making on the apartment wall constituted either messages, slogans, signs or symbols as required by the statute. The State responds that they were not required to prove that the marks on the wall had any particular meaning because the marks were clearly graffiti and the legislature intended that any marks made on walls without permission, even if they do not fall into one of the above categories, should be prosecuted under this statute. We disagree.

¶ 10 When determining the meaning of a statute, "[w]e look first to the plain language of the statute as the most reliable indicator of its meaning." *State v. Mitchell*, 204 Ariz. 216, 218, ¶ 12, 62 P.3d 616, 618 (App.2003) (citation omitted). "It is clear that words and phrases in statutes shall be given their ordinary meaning unless it appears from context or otherwise that a different meaning is intended." *State v. Wise*, 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983) (citation omitted). When terms are not defined by the legislature and when "there is no indication that the [l]egislature intended that [those] word[s] be given an extraordinary meaning, reference to an established, widely respected dictionary for the ordinary meaning of these words is acceptable." *Id.; see also John M.*, 201 Ariz. at 424, ¶ 7, 36 P.3d at 774 (looking to "established and widely used" dictionaries to define "gesture" when legislature did not provide definition).

¶ 11 The legislature did not define "message," "slogan," "sign," or "symbol," and there is no indication that the legislature intended those words to have any extraordinary meanings. Accordingly, we turn to the ordinary meanings of the words. A "mes-sage" is defined as "a communication delivered in writing, speech, by means of signals, etc." *Random House Webster's College Dictionary* 830 (2nd ed.1999). A "sign" is defined as "a conventional mark, figure, or symbol used as an abbreviation for the word or words it represents." *Id.* at 1218. "Slogan" is defined as "a distinctive phrase or motto identified with a particular party, product, etc.; catchword or catch phrase." *Id.* at 1233. Finally, "symbol" is defined as "something used for or regarded as representing something else." *Id.* at 1323.

¶ 12 All these definitions indicate that in A.R.S. § 13–1602(A)(5) the legislature prohibited drawing or inscribing marks that are capable of conveying some meaning, communication or information. Had this not been the case, we see no reason why the legislature would have created a subsection prohibiting these specific categories of markings. Without this added requirement, there is nothing to differentiate this subsection from § 13–1602(A)(1), which prohibits "[d]efacing or damaging [the] property of another person." [3]

¶ 13 In this case, Gaddis called one of the marks Ubaldo was accused of making on the wall a "smudge." The State presented no further testimony or evidence regarding the nature of the markings, and the trial court stated that it could not discern from the photographs of the scene any particular meaning from the markings.[4] There is no evidence in the record to support a finding that Ubaldo drew or inscribed "a message, slogan, sign or symbol" as required by the statute. Accordingly, we must find that there is insufficient evidence to support Ubaldo's conviction on this charge. *See Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense ... charged."); *In re Winship*, 397

---

**3.** "Defacing" is defined as "any unnecessary act of substantially marring any surface or place, by any means, or any act of putting up, affixing, fastening, printing, or painting any notice upon any structure, without permission from the owner." A.R.S. § 13–601(2).

**4.** The pictures introduced as exhibits at the adjudication hearing are not part of the record on appeal.

U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("Due Process ... protects [the] accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

 ¶ 14 The State further argues that if it must prove the marks drawn or inscribed had some sort of meaning constituting a message, slogan, sign or symbol, expert testimony would be required in every graffiti case. We disagree. Whether a particular mark has any meaning is a matter frequently within the common knowledge of a person of ordinary education and background. If not, then expert testimony may be needed.

> Expert testimony is permitted when the subject is beyond the common experience of most persons and the opinion of an expert will assist the trier of fact. If the matter, however, is of such common knowledge that persons of ordinary education and background could reach as intelligent a conclusion as an expert, the testimony should be precluded.

*State v. Williams,* 132 Ariz. 153, 160, 644 P.2d 889, 896 (1982) (internal citations omitted); *see also* Ariz. R. Evid. 702 (allowing the admission of expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

¶ 15 In a case like this one, where it is not apparent that the marks made convey a meaning of some kind and there is no testimony to that effect, the proper charge would be defacing or damaging the property of another pursuant to A.R.S. § 13–1602(A)(1). The State argues that because other statutes refer to A.R.S. § 13–1602(A)(5), the legislature has "made it clear that a juvenile can be charged with committing graffiti [criminal damage] under either A.R.S. § 13–1602(A)(1) or A.R.S. 13–1602(A)(5)." We do not disagree with this proposition, we only stress that if a juvenile is charged with committing criminal damage under the (A)(5) subsection, the State must prove beyond a reasonable doubt that the juvenile drew or inscribed "a message, slogan, sign, or symbol" as mandated by the statute. To find otherwise would eliminate any meaningful difference between the two subsections. We are also not persuaded by the State's argument that because various transportation statutes refer to both the (A)(1) and (A)(5) subsections, along with various city ordinances prohibiting graffiti, the legislature must have intended that the two subsections in the criminal code and the city ordinances all prohibit the exact same behavior.

## CONCLUSION

¶ 16 For the preceding reasons, we reverse the juvenile court's adjudication and the resulting disposition.

CONCURRING: JAMES B. SULT, Presiding Judge, and MAURICE PORTLEY, Judge.