NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE ISAIAH A.

No. 1 CA-JV 17-0241
FILED 10-17-2017

Appeal from the Superior Court in Maricopa County
No. JV200857
The Honorable Colleen L. French, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Gallagher & Kennedy, P.A., Phoenix
By Woodrow C. Thompson, Hannah H. Porter
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Andrea L. Kever
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

**C R U Z**, Judge:

¶1        Isaiah A. appeals his adjudication of delinquency for one count of child molestation against the victim ("Victim"), claiming it was unsupported by sufficient evidence.  Because we find sufficient evidence to uphold the adjudication, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        In June 2014, Victim's mother, a chiropractor, went to Sarah A.'s house to perform an adjustment on Sarah's newborn daughter. Victim's mother brought along her three children, including Victim, then six years old.  Sarah had been the mother's client and friend for several years, and Victim's mother had met Sarah's children, including Isaiah and his brother Carman.  Victim's mother had adjusted both Isaiah and Carman in the past.

¶3        Isaiah let Victim's mother in the house, and while the mother went upstairs to perform the adjustment, Victim and her two brothers stayed downstairs to play.  Victim's mother was upstairs for roughly forty-five minutes.  When Victim's mother came downstairs, she noticed Victim sitting on Isaiah's lap with a blanket covering them; Carman was in a nearby area.  Concerned for Victim based on what she saw, the mother collected her children and left Sarah's home.

¶4        After driving away, Victim's mother pulled over, took Victim behind the car, and asked her if Isaiah had touched her, and Victim nodded yes.  Victim's mother asked if he had touched her in her underwear, and Victim again nodded yes.  When Victim's mother asked if he touched her vagina, Victim looked down and turned her head before nodding yes. Victim's mother then called the police, and Victim was brought to Childhelp[1] for questioning and a physical examination.

¶5        Isaiah was charged with one count of molestation of a child, a Class 2 felony.  Ariz. Rev. Stat. ("A.R.S.") § 13-1410.

¶6        At the adjudication hearing, Victim's mother testified that when she came downstairs after completing the chiropractic adjustment, she saw Victim sitting on Isaiah's lap under a blanket, with "very big eyes," and that Victim looked terrified.  Victim's mother could not say whether it was Isaiah or Carman, on whose lap Victim was sitting, but described the

---

[1]        Childhelp is a nonprofit organization dedicated to helping victims of child abuse and neglect.

boy as matching Isaiah's appearance. Victim's mother's first thought was that Isaiah was touching Victim, although she could not see Isaiah's hands. Mother testified that as she gathered the children to leave the home, Isaiah followed her, asking random questions and being more talkative than usual. On cross-examination, Victim's mother agreed that when she pulled over after leaving the house, she asked Victim leading questions and then told her that what Isaiah had done was wrong. She testified, however, that she did not believe Victim was saying yes simply because she thought she, as the Victim's mother, wanted her to or had suggested it.

¶7 Victim, nine years old at the time of the hearing, testified that she had been touched inappropriately by Isaiah, even though she could not remember when it happened or identify the boy in court. Victim testified that she sat on Isaiah's lap with a blanket covering them both although it was not cold, and Isaiah used his hand to touch her genitals. Victim otherwise remembered very little of the incident.

¶8 Both Carman and Isaiah testified Victim sat on Isaiah's lap, not Carman's, although Isaiah denied he touched Victim's genitals. Isaiah testified he played with Victim and her siblings, playfully dragged them on the blanket he regularly slept with, and watched a movie with them. He testified that during the movie Victim sat on his lap, and he used the blanket to cover them because Victim was cold. Further, both Isaiah and Carman stated Victim's mother commented on how cute the children looked sitting together when she came downstairs and did not appear concerned or upset when she left.

¶9 The pediatric nurse at Childhelp testified about her examination of Victim. The nurse testified there were no injuries to Victim but swabs were taken from Victim's genitals. The State's DNA analyst testified the swabs contained small amounts of male DNA, although the analyst testified that it was not such a "low level" to signify transfer of DNA through secondary contact.[2] Instead, the DNA analyst testified the transfer was primary, in that DNA was transferred from its source directly to

---

[2] A secondary transfer could have occurred if Isaiah touched the blanket, and the blanket touched Victim's genitals. Isaiah contended the evidence showed a tertiary transfer, as for example, where Isaiah touched the blanket, the blanket touched Victim's hand, and Victim then touched her genitals with her hand, or where Victim was playfully dragged on the blanket which contained Isaiah's DNA, Victim's underwear touched the blanket, and Isaiah's DNA was transferred to the blanket, to Victim's underwear, to her genitals.

Victim's genitals. The DNA profile belonged to males paternally related to Isaiah, which would include Isaiah as well as Carman. Some of the DNA results were inconclusive, but others matched Isaiah's pattern at eleven locations, an instance that randomly would not occur more frequently than one in 1,300 Caucasian males.

¶10        Isaiah's DNA witness did not dispute the methodology the State's expert used or the results showing a link to Isaiah's family lineage, but disagreed with how the DNA came to be present on Victim's genitals. Isaiah's expert testified that in her opinion, the amount of DNA available did not indicate the level of transfer, as the relation of DNA from a primary transfer to secondary transfer is unknowable.[3] In the expert's opinion, the transfer could have occurred primarily, but also secondarily or tertiarily through contact with the blanket that Isaiah regularly slept with or through other innocuous contact.

¶11        At the conclusion of the hearing, the court found the State had proved beyond a reasonable doubt that Isaiah committed the charged offense and adjudicated Isaiah delinquent. Isaiah timely appealed.

¶12        We have jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶13        Whether sufficient evidence exists to support an adjudication is a question of law, subject to de novo review on appeal. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). The relevant question is whether there is such proof that reasonable persons could accept as adequate and sufficient to support a finding of the essential elements of the offense beyond a reasonable doubt. *Id.* at ¶ 16. We will not re-weigh the evidence, and we will reverse only if there is a complete absence of probative facts to support the judgment or if the judgment is contrary to any substantial evidence. *In re John M.*, 201 Ariz. 424, 426, ¶ 7 (App. 2001).

---

[3]        Isaiah's expert testified, "You cannot use the amount of DNA detected to make a determination as to whether something was [a] primary or secondary transfer, because we don't know how much DNA was transferred to begin with in a primary transfer." She explained that if a primary transfer involved a large amount of DNA, resulting secondary and tertiary transfers may contain higher levels of DNA than some primary transfers.

**¶14** A person commits molestation of a child by intentionally or knowingly engaging in sexual contact with a child who is under fifteen years of age. A.R.S. § 13-1410. "Sexual contact" is defined as "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body . . . ." A.R.S. § 13-1401(A)(3).

**¶15** Isaiah was adjudicated of intentionally or knowingly touching Victim's genitals by use of his hands. At the hearing, the court heard Victim testify that Isaiah touched her genitals, and DNA evidence tended to support that testimony. Moreover, the State's DNA expert testified the amount of DNA present indicated a direct contact between Isaiah and Victim's genitals; Isaiah's expert witness testified the amount of DNA was inconclusive as to the type of transfer. Although Isaiah argues vigorously on appeal that Victim could not identify him at trial and that Victim's mother was not certain at first whether it was Isaiah or Carman who had molested her daughter, it was undisputed at trial that when the mother came downstairs, Victim was sitting on Isaiah's lap, not Carman's. Further, although Isaiah's counsel cross-examined Victim's mother about the manner of her questioning of Victim after they left the house, the court was in the best position to weigh the credibility of witnesses. *See State v. Olquin*, 216 Ariz. 250, 252, ¶ 10 (App. 2007) ("[W]e do not impose our own determination as to the credibility of witnesses . . . [but] will defer to the trial court's assessment of witness credibility because the trial court is in the best position to make that determination.").

## CONCLUSION

**¶16** This Court finds there was sufficient evidence on record to support Isaiah's adjudication, and we will not reverse the superior court's finding that Isaiah intentionally or knowingly engaged in sexual contact with Victim by touching her genitals. We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA