NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAMUEL P., *Appellant*,

*v.*

MINDY D., A.P., *Appellees*.

No. 1 CA-JV 22-0163
FILED 12-01-2022

Appeal from the Superior Court in Maricopa County
No. JS21164
The Honorable David O. Cunanan, Judge (Retired)

**AFFIRMED**

APPEARANCES

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Mindy D., Avondale
*Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

---

**W I L L I A M S**, Judge:

¶1        Samuel P. ("Father") appeals the superior court's order terminating his parental rights. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[1]**

¶2        Father and Mindy D. ("Mother") are the parents of A.P., born in 2014. When A.P. was two years old, Mother abruptly left the relationship with Father because, according to her, he was emotionally and physically abusive and abusing drugs and alcohol. She obtained a protective order against Father that year, and thereafter, the parents hardly communicated at all.[2] Mother and child initially moved in with maternal relatives and eventually, into their own home.

¶3        After the breakup, Mother remained in phone contact with A.P.'s paternal grandmother and facilitated regular visits between paternal grandparents and A.P. for the next three years. Father was sometimes present at these visits but had no other contact with A.P. Father sent the child no cards, gifts, or letters and made only a few child support payments over several years.

¶4        In 2019, Father was in and out of jail for various drug charges. That September, Mother remarried. Two months later, she ended visits between A.P. and paternal grandparents after they mentioned pursuing visitation through court. Once those visits ended, Father had no further contact with A.P.

---

[1] "We review an order terminating a parent's relationship with his or her child . . . in the light most favorable to sustaining the superior court's ruling." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013).

[2] The evidence does not suggest that A.P. was included in the protective order.

¶5 Father was arrested in 2020 for drug charges and later sentenced to four years imprisonment for a separate armed robbery conviction.

¶6 In December 2021, Mother petitioned to terminate Father's parental rights, as relevant here, based on his lengthy felony incarceration and abandonment. *See* A.R.S. § 8-533(B)(1), (B)(4). Afterwards, Father sent A.P. a few postcards. After a trial, the superior court terminated Father's parental rights, and he appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 601(a).

## DISCUSSION

¶7 Father argues no reasonable evidence supports the superior court's determination that he abandoned A.P. In the alternative, he argues that Mother prevented contact between him and the child. Father also argues that termination was not in A.P.'s best interests.

¶8 A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by clear and convincing evidence. *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005).

¶9 This court "will accept the [superior] court's findings of fact unless no reasonable evidence supports those findings and will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). This court does not reweigh the evidence, but "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶10 A parent may forfeit his parental rights if he abandons his child. A.R.S. § 8-533(B)(1). Abandonment occurs when the parent fails to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). Abandonment is measured by a parent's conduct, not his subjective intent. *Michael J.*, 196 Ariz. at 249-50, ¶ 18. The court must consider whether "[the] parent has provided reasonable support, maintained regular contact, made more than

3

minimal efforts to support and communicate with the child, and maintained a normal parent-child relationship." *Id.*

¶11 Here, the superior court found that Father failed to maintain a normal parent-child relationship with A.P. for almost four years. Its specific findings were that:

> Father's relationship [with A.P.] consisted of occasional supervised visits when the Child was visiting with the Paternal Grandmother during Grandmother's scheduled visitations . . . . Father never had custody of the child overnight, nor did he seek to arrange his own visitation outside of paternal grandmother. The paternal grandmother, as opposed to father, was the main factor in maintaining father's relationship with the child. After Paternal Grandmother's visits ended in 2019, Father did not take appropriate steps to try to maintain and nurture the parent-child relationship. Father testified that he placed the responsibility of his visitation with his child on Mother. Father testified that he did not seek a remedy through the courts. Father has not had contact with his daughter since 2019.

Reasonable evidence supports the courts findings.

¶12 Father contends he often visited A.P. between 2016 and 2019, but Mother testified he did not. Based on A.P.'s statements to her, Mother testified that Father missed most of A.P.'s visits with her grandparents, and when Father was there, "he would be in his room asleep or talking on the phone." Moreover, sometimes Father would tell A.P. he was coming for a visit, but he did not show up.

¶13 After hearing this evidence, the superior court concluded that Father did not provide reasonable support for or normal supervision to A.P., and did not maintain regular contact with the child. This court will not reweigh that determination on appeal. *See Jesus M.*, 203 Ariz. at 282, ¶ 12 ("The resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not re-weigh the evidence on review.").

¶14 Father argues alternatively that his abandonment was justified because Mother prevented regular contact between him and A.P. by not sharing her address and phone number with him. But the record shows that neither parent initiated much conversation with the other after

their breakup, even after the protective order presumably expired in 2017. Moreover, Father did not seek out parenting time through the courts, or additional time through Mother, because he felt the arrangement with paternal grandparents "was working." And although Mother never shared her address with Father, he did not ask her for it. Nor did he ever attempt to contact Mother through his parents. Father has not shown that Mother restricted Father's ability to interact with A.P. *See Calvin B.*, 232 Ariz. at 297, ¶¶ 23–25 (holding father did not abandon son because mother prevented their contact despite father's consistent efforts).[3]

**¶15** Father also argues that termination was not in A.P.'s best interests. In addition to finding a statutory ground for termination, the superior court must also determine what is in the best interests of the child by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶16** The court may find that a child would benefit from termination if there is an adoption plan or if the child is adoptable, *Id.* at 150-51, ¶¶ 13-14, or if the child "would benefit psychologically from the stability an adoption would provide." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶17** Here, Father maintains that termination is not in A.P.'s best interests because it will deprive her of a relationship with him and his family. Father's assertion, even if true, fails to establish that no reasonable evidence supports the court's order. Indeed, the court found that termination would benefit A.P. because "it would allow [her] to address the feelings of abandonment she suffers from her father's neglect." The court

---

[3] Because sufficient evidence supports the abandonment ground for termination, we need not consider Father's arguments regarding the length-of-felony-sentence ground. *See Mary Lou C.*, 207 Ariz. at 49, ¶ 14.

also found that A.P. "is able to articulate how being free to be adopted by her stepfather would allow her to put the pain and hurt she suffered due to her father's neglect behind her and move forward with the father figure she feels has provided the parental relationship she needs." Finally, the court found that Mother and stepfather were meeting A.P.'s needs and that stepfather wished to adopt her. Reasonable evidence supports these findings.

¶18 Father claims that Mother needed to provide expert testimony to evaluate the degree to which Father's abandonment affected A.P. emotionally, but provides no controlling authority to support his position. And Mother and stepfather's testimony about A.P.'s feelings is sufficient to support a best-interests determination. *See In re John M.*, 201 Ariz. 424, ¶ 7 (App. 2001) (This court will not disturb the superior court's order unless "there is a complete absence of probative facts to support the judgment or . . . the judgment is contrary to any substantial evidence."). On this record, Father has shown no error.

## CONCLUSION

¶19 For the foregoing reasons, we affirm.

