238 P.3d 632

### In re AMBER S.

### No. 1 CA–JV 10–0061.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 31, 2010.

---

Matthew J. Smith, Mohave County Attorney's Office By Steven M. Wilson, Deputy County Attorney, Kingman, Attorneys for Appellee.

Jill L. Evans, Mohave County Appellate Defender By Diane S. McCoy, Deputy Appellate Defender, Kingman, Attorneys for Appellant.

## OPINION

WINTHROP, Judge.

¶ 1 Amber S. ("Juvenile") appeals from the juvenile court's disposition order reinstating her on intensive probation and placing her in foster care after repeated violations of her probation imposed for a prior adjudication of delinquency. Juvenile argues that her admission to the allegations made in the most recent probation revocation petition was not knowingly, intelligently, or voluntarily made because she had not been advised that foster

care was a potential consequence of admitting such allegations. Further, Juvenile argues that the court's order placing her in foster care should be declared void because the court failed to specifically determine as required by Rule 19.1 of the Arizona Rules of Procedure for the Juvenile Court that continuing to live with her parents "would be contrary to the welfare of the child." For the following reasons, we affirm the court's disposition order but remand with directions for the juvenile court to amend the order to fulfill the applicable requirement under Rule 19.1.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On December 21, 2007, a Kingman police officer received information that two students were in possession of marijuana on school grounds. After a brief investigation, Juvenile and a schoolmate received referrals for possession of marijuana and possession of drug paraphernalia, and a delinquency petition was filed, charging Juvenile with those offenses. As the result of a disposition agreement, Juvenile admitted the possession of marijuana count as an undesignated offense, the possession of drug paraphernalia count was dismissed, and on June 24, 2008, Juvenile was placed on standard probation for one year.

¶ 3 On March 16, 2009, Juvenile's probation officer filed a petition to revoke Juvenile's probation. Juvenile entered a disposition agreement pursuant to which she admitted violating the terms of her probation, she was reinstated on standard probation for one year, and her offense was designated a class six felony. On July 17, 2009, another probation revocation petition was filed. Juvenile again entered a disposition agreement in which she admitted violating the terms of her probation, and she was subsequently placed on intensive probation until her eighteenth birthday.[1] On January 7, 2010, Juvenile's probation officer filed a third probation revocation petition against Juvenile, alleging that she

had once more violated numerous conditions of her probation.

¶ 4 Juvenile entered yet another disposition agreement, admitting the allegations made in the January 7, 2010 petition. In the agreement, Juvenile expressly identified and acknowledged the constitutional rights she was waiving by signing the agreement and admitting the subject probation violations. Further, Juvenile explicitly acknowledged that, in the event the agreement was accepted, the court's disposition authority ranged from reinstatement of probation with appropriate terms up to and including commitment of Juvenile to the Arizona Department of Juvenile Corrections ("ADJC") until the age of eighteen. At the January 26, 2010 advisory hearing, Juvenile was again advised of her constitutional rights, as identified by Rule 32(D)(2), Ariz. R.P. Juv. Ct., and expressly reminded of the range of dispositions available to the court, including commitment to ADJC. Juvenile affirmed on the record her understanding of her rights and the court's options, confirmed her desire to proceed with the agreement, and provided a factual basis for her admission to the various probation violations. Thereafter, following review of the Probation Violation Report and Recommendations, the court held a disposition hearing, reinstated Juvenile on intensive probation until her eighteenth birthday, and imposed additional conditions, including but not limited to directing Juvenile to serve a suspended ninety-day period of detention in the Mohave County Juvenile Detention Center and ordering that she be placed in foster care until further court order.

¶ 5 Juvenile filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; Arizona Revised Statutes ("A.R.S.") sections 8–235(A) (2007) and 12–120.21(A)(1) (2003); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## STANDARD OF REVIEW

¶ 6 We review the facts in the light most favorable to sustaining the juvenile

---

1.  Additionally, on multiple occasions, the juvenile court ordered that Juvenile serve time in the Mohave County Juvenile Detention Center as an

intermediate sanction for violating terms of her probation.

court's orders. *See In re John M.,* 201 Ariz. 424, 426, ¶ 7, 36 P.3d 772, 774 (App.2001). We will not disturb the court's disposition order absent an abuse of discretion. *In re Nickolas T.,* 223 Ariz. 403, 404, ¶ 4, 224 P.3d 219, 220 (App.2010). Questions of law, however, such as the interpretation of rules or statutes, are reviewed *de novo. See John M.,* 201 Ariz. at 426, ¶ 7, 36 P.3d at 774.

## ANALYSIS

### *I. Due Process*

■ ¶ 7 Juvenile argues that her admission to the allegations made in the probation revocation petition was not knowingly, intelligently, or voluntarily made because she had not been specifically advised that placement in foster care was a potential consequence. Further, Juvenile argues that she was entitled to be informed of all possible consequences and that such notice was mandated by principles of due process. Although we agree that Juvenile was entitled to notice of the range of potential actions available to the court, including the maximum punishment that could be imposed, the court was not obligated to explicitly inform her that one of the lesser but potential options was placement outside the family home.

¶ 8 The authority of the juvenile court as it relates to the disposition and/or commitment of a juvenile offender in this setting is generally outlined in A.R.S. § 8–341(A)(1) (Supp. 2009), which provides as follows:

A. After receiving and considering the evidence on the proper disposition of the case, the court may enter judgment as follows:

1. It may award a delinquent juvenile:

(a) To the care of the juvenile's parents, subject to the supervision of a probation department.

(b) To a probation department, subject to any conditions the court may impose, including a period of incarceration in a juvenile detention center of not more than one year.

(c) To a reputable citizen of good moral character, subject to the supervision of a probation department.

(d) To a private agency or institution, subject to the supervision of a probation officer.

(e) To the department of juvenile corrections.

(f) To maternal or paternal relatives, subject to the supervision of a probation department.

(g) To an appropriate official of a foreign country of which the juvenile is a foreign national who is unaccompanied by a parent or guardian in this state to remain on unsupervised probation for at least one year on the condition that the juvenile cooperate with that official.

■ ¶ 9 In determining the proper disposition of a juvenile following an adjudication of or admission to delinquency, the court's options range from the less severe (probation on specified terms) to the most severe (commitment to ADJC up to age eighteen). Along that continuum, but less severe than incarceration in a correctional facility, is the placement of the juvenile outside the familial home, e.g., in a residential care facility, with maternal or paternal relatives, or even with a "reputable citizen of good moral character," all under the supervision of a probation officer. *See* A.R.S. § 8–341(A)(1)(c)–(d), (f).

■ ¶ 10 Under these circumstances, the only obligation the court has before accepting a juvenile's admission of a probation violation via a disposition agreement is to ensure that the juvenile has read the agreement and understands and expressly waives the constitutional rights identified in Rule 32(D)(2), and that a range of potential dispositions that might be considered, including the maximum punishment, is disclosed. All of these obligations were expressly fulfilled in this case, both in writing (through the disposition agreement) and on the record (at the advisory hearing). As a practical matter, the court cannot be required to be more specific than providing the parameters and the upper limit of dispositions. Until it has had the opportunity to review the Probation Violation Report and Recommendations, the court is simply not in a position to know with certainty which of the available options, within the range of those previously identified to the juvenile, is most appropriate.

¶ 11 The wisdom of such an approach is borne out by the facts of this case. Here, Juvenile's initial delinquency was a relatively minor violation; however, her apparent persistent inability to comply with even nominal probation terms led to repetitive petitions to revoke. The Probation Violation Report and Recommendations provided to the court following the January 26, 2010 advisory hearing revealed for the first time that, based on the writer's careful investigation, Juvenile's inability to comply was not entirely volitional. In the view of the probation department, Juvenile was being sabotaged in her efforts to comply by a chaotic, inconsistent, and unsupportive home life. The instability of that environment, the lack of united parental support, and the observation that the actions of one or both parents were to some extent "enabling" Juvenile's behavior, were set forth in detail for the first time, and more than justified the sound and compassionate recommendation that Juvenile be returned to intensive probation, but under the supervision of a different family.[2]

¶ 12 Based on the explicit range of potential dispositions authorized by statute and identified in both the disposition agreement and at the advisory hearing, the court could have simply committed Juvenile to ADJC. Instead, based on the information contained in the probation report, the court fashioned a thoughtful disposition, designed to maximize the chance that Juvenile would succeed with the reinstated intensive probation. We reject the notion that due process requires the court at the advisory hearing to do more than outline the parameters of potential dispositions. The court here chose a disposition that was less severe than the upper parameter explicitly disclosed to Juvenile and her counsel. That discretionary act was well within the authority granted by statute and, under the facts of this case, we see no abuse of that discretion.

## II. Welfare Determination

■ ¶ 13 Juvenile also argues that the court order placing her in foster care should be declared void because the court did not make a specific determination whether continuing to live in her parents' home was contrary to her welfare. Rule 19.1, Ariz. R.P. Juv. Ct., provides in pertinent part as follows:

If a child has been removed from the child's home by state authority in a delinquency proceeding, the court shall make protecting the child from abuse or neglect the first priority. *In the court's first order that sanctions the removal of a child, the court shall determine whether continuation of the child's residence in the home would be contrary to the welfare of the child.*

(Emphasis added.) Here, the signed order placing Juvenile in foster care does not contain an explicit finding that continuing to live in her parents' home during her reinstated intensive probation would be contrary to her welfare.

¶ 14 The State contends that the absence of such explicit determination or factual findings in the court order is acceptable because the court's statements on the record at the disposition hearing at a minimum implied the rationale behind the determination to order foster care placement, and that the information contained in the juvenile court file supports such implicit determination. The State further contends that we can presume such findings were made. We acknowledge that such presumption exists. *See, e.g., In re Niky R.*, 203 Ariz. 387, 392, ¶ 21, 55 P.3d 81, 86 (App.2002). Further, we agree that, reviewing the entire record, including the juvenile court's statements at the disposition hearing, we can determine the court's rationale in electing to order foster care placement and, as previously discussed, we find no abuse of the court's discretion in doing so.

¶ 15 Rule 19.1 does not require the juvenile court to state its rationale for the determination to remove the child from the family home. Although we agree that a "best practices" approach would lead a juvenile court

---

2. At the time of the probation report and disposition hearing, there was no opening available for Juvenile in a residential care facility. The foster care option ultimately recommended by probation services was placement with Juvenile's maternal aunt and uncle in New Mexico.

judge to make such findings,[3] *see generally* NCJFCJ (Nat'l Council of Juv. & Family Court Judges) Juvenile Delinquency Guidelines: Improving Court Practice in Juvenile Delinquency Cases, 141–46 (2005) (*available at http://www.ncjfcj.org/images/stories/dept/ppcd/pdf/JDG/07chapter.pdf*), we cannot rewrite the juvenile court rules to compel those findings. We note that, in other juvenile court rules, our supreme court has explicitly directed that the juvenile court judge set forth findings in support of a particular action.[4] Accordingly, we must conclude that, had the supreme court wanted to require similar formal findings explaining the determination required under Rule 19.1, it would have done so.

¶ 16 The lack of any requirement in the rule for formal findings or a stated rationale does not, however, obviate the requirement that the order expressly determine that continuation of the child's residence in the home would be contrary to the welfare of the child. Accordingly, we remand this matter to allow the juvenile court to amend the written disposition order to expressly reflect such determination.

## CONCLUSION

¶ 17 For the reasons discussed, we affirm and remand. The record supports the disposition ordered and the findings that were required to be made. The juvenile court's written dispositional order placing Juvenile in foster care must be amended, however, to fulfill the applicable requirement under Rule 19.1.

CONCURRING: PETER B. SWANN, Presiding Judge and MARGARET H. DOWNIE, Judge.

---

3. Optimally, the court's order in this regard would not only expressly state its determination that removal of the child from the home is necessary, but also succinctly identify the reasoning why, based on the information available to the court at that time, "continuation of the child's residence in the home would be contrary to the welfare of the child." *See generally In re Welfare of J.S.S.*, 610 N.W.2d 364, 367–68 (Minn.Ct.App. 2000) (requiring that the juvenile court assess the juvenile's needs and explain how the juvenile's best interests would be served by an out-of-home placement). There may be instances where a probation department report, a hearing transcript, court reporter notes, or a digital recording of the proceedings leading to such determination is lost or for some reason is unavailable. A subsequent judicial officer, or any other interested party entitled to access the juvenile court file, must be able to easily understand the substantive and procedural history of the case. Having the court order removing a juvenile from the home to at least briefly recite the justification for same fulfills that legitimate court objective.

4. *See, e.g.,* Ariz. R.P. Juv. Ct. 47.1 (requiring the juvenile court to "state on the record a factual basis" for its determinations regarding removal of a child from the home in dependency proceedings); 48.1(C)(2) (requiring that the juvenile court make specific enumerated findings before ordering in-home intervention after the filing of a dependency petition); 50(C) (requiring the juvenile court to make findings and enter orders when determining at a preliminary protective hearing whether continued temporary custody of a child is necessary); 52(D)(1) (requiring that, at an initial dependency hearing, the juvenile court determine whether service has been completed and enter findings as to notification and service upon the parties); 55(E)(3) (requiring the juvenile court to "[s]et forth specific findings of fact in support of a finding of dependency"); 56(E) (requiring the juvenile court to make findings and enter appropriate orders in conducting a disposition hearing to determine the appropriate placement of a child who has been adjudicated dependent); 57(C)(1) (requiring that the juvenile court set forth in writing "the specific factual basis for its findings" if it determines that family reunification efforts are not required); 58(F)(2) (requiring that, at a review hearing, the juvenile court "[m]ake specific findings of fact" if it determines that a child continues to be dependent).