NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TIEN F.

No. 1 CA-JV 17-0582
FILED 6-28-2018

Appeal from the Superior Court in Mohave County
No.  L8015JV201607045, L8015JV201707032, L8015JV201707046,
L8015JV201707054, L8015JV201707081
The Honorable Steven C. Moss, Judge

**AFFIRMED**

COUNSEL

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

Mohave County Attorney's Office, Kingman
By Deborah L. Hebert
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jon W. Thompson joined.

**J O N E S**, Judge:

¶1         Tien F. (Juvenile) appeals the juvenile court's order committing him to the Arizona Department of Juvenile Corrections (ADJC). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         In January 2017, Juvenile pleaded delinquent to one count of possession of drug paraphernalia and was placed on standard juvenile probation for twelve months.[1]  Two months later, Juvenile was prepared to admit he had violated the terms of his probation by running away from home, using marijuana, using prescription medication without a prescription, skipping school, and violating the school dress code, but his juvenile probation officer (JPO) filed a supplemental petition to revoke his probation before disposition.

¶3         In May, Juvenile admitted violating the terms of his probation by possessing tobacco on school grounds, committing a new offense of disorderly conduct by domestic violence against his mother, and using marijuana.  At the time, Juvenile had been diagnosed with severe cannabis use disorder and oppositional defiant disorder and assessed as a "very high" risk on the Arizona Youth Assessment System.  The juvenile court found the juvenile probation department had made reasonable but unsuccessful efforts to provide services that would allow Juvenile to remain at his home and ordered Juvenile be placed in a residential shelter.  At disposition, the court placed Juvenile on intensive juvenile probation until his eighteenth birthday.  A few weeks later, Juvenile admitted violating the terms of his probation by running away from the shelter.

¶4         On July 3, 2017, Juvenile returned to the care of his mother. One week later, Juvenile admitted he had again violated the terms of his probation by committing a new offense of disorderly conduct by domestic violence against his mother and running away from home.  During this period, Juvenile tried LSD.  The following month, Juvenile again admitted violating the terms of his probation, this time by breaking into his mother's safe, removing her medical marijuana, and using it.  He also admitted he possessed drug paraphernalia and failed to charge his tracking unit as

---

[1]      We view the facts in the light most favorable to sustaining the juvenile court's order.  *In re Amber S.*, 225 Ariz. 364, 366-67, ¶ 6 (App. 2010) (citing *In re John M.*, 201 Ariz. 424, 426, ¶ 7 (App. 2001)).

directed. After each admission, the juvenile court found Juvenile violated his probation and reinstated him on juvenile intensive probation.

¶5 Juvenile was placed in residential treatment at a therapeutic group home in September 2017. In November, Juvenile again admitted violating the terms of his probation by stealing cash from a vehicle, using the proceeds to purchase marijuana, and smoking the marijuana at the group home.

¶6 At the disposition hearing on the newest offenses and probation violations held in December 2017, the assigned JPO reported Juvenile had received approximately thirteen referrals (under five separate juvenile court case numbers) in the previous fourteen months, suggesting "a blatant disregard" for the law and juvenile court's orders. The JPO noted that while Juvenile had been offered a myriad of services to address his substance abuse and poor decision-making — including counseling, drug testing, and residential treatment — Juvenile was non-compliant, and the services were ineffective. Thus, Juvenile continued to exhibit a pattern of aggressive and violent behavior when frustrated that caused the JPO concern for the safety of others. Additionally, based upon the standardized assessment tool, Juvenile was considered a moderate-high risk to reoffend without residential intervention. Accordingly, the JPO recommended Juvenile be committed to ADJC. Juvenile's mother agreed the residential treatment was ineffective and expressed concern for her safety should Juvenile return to her care.

¶7 Noting that Juvenile's history included two felony adjudications for possession of drug paraphernalia; three misdemeanor adjudications for two separate instances of disorderly conduct by domestic violence and theft; one as-yet undesignated offense of solicitation to commit burglary; and countless probation violations, reflecting a "regularly progressing devolution . . . to more and more serious offenses," the juvenile court ordered Juvenile to be committed to ADJC for at least thirty days, where he would be evaluated and considered for participation in various treatment programs. Juvenile timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 8-235(A),[2] 12-120.21(A)(1), and -2101(A)(1). *See Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 513, ¶ 3 (App. 2000) ("[T]he final order in a delinquency action is the disposition

---

[2] Absent material changes from the relevant date, we cite the current version of rules and statutes.

order.") (citing *Maricopa Cty. Juv. Action No. J-78151-S*, 119 Ariz. 320, 321 (App. 1978)).

**DISCUSSION**

**¶8**　　　　"The juvenile court has broad discretion to determine an appropriate disposition for a delinquent juvenile." *In re Niky R.*, 203 Ariz. 387, 390, ¶ 10 (App. 2002) (citing *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 7 (App. 1999)). Accordingly, we will not modify the court's disposition absent an abuse of discretion. *Id.* (citing *Kristen C.*, 193 Ariz. at 563, ¶ 7). A court abuses its discretion "when the [disposition] decision is arbitrary or capricious, or when the court fails to conduct an adequate investigation into the facts relevant to [disposition]." *State v. Fillmore*, 187 Ariz. 174, 184 (App. 1996) (citing *State v. Stotts*, 144 Ariz. 72, 87 (1985)).

**¶9**　　　　Generally, the juvenile court's options at disposition "range from the less severe (probation on specified terms) to the most severe (commitment to ADJC up to age eighteen)." *Amber S.*, 225 Ariz. at 367, ¶ 9; *see also* A.R.S. § 8-341(A)(1). Before committing a juvenile to ADJC, however, the court must consider the following guidelines promulgated in the Arizona Code of Judicial Administration § 6-304(C)(1) (Guidelines):

a.　　Only commit those juveniles who are adjudicated for a delinquent act and whom the court believes require placement in a secure care facility for the protection of the community;

b.　　Consider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, as well as a way of holding the juvenile accountable for a serious delinquent act or acts;

c.　　Give special consideration to the nature of the offense, the level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community; and

d.　　Clearly identify, in the commitment order, the offense or offenses for which the juvenile is being committed and any other relevant factors that the court determines as reasons to consider the juvenile a risk to the community.

**¶10** With the exception of subsection (a), the Guidelines are "just that: guidelines; they are not mandatory and do not place constraints on the juvenile court's discretion" to determine whether commitment to ADJC is appropriate. *Niky R.*, 103 Ariz. at 390, ¶ 12 (quoting *Pinal Cty. Juv. Delinquency Action No. JV-9404492*, 186 Ariz. 236, 238 (App. 1996), and citing *In re Melissa K.*, 197 Ariz. 491, 495, ¶ 14 (App. 2000)). Nor must they be applied "in a mechanical fashion." *Id.* at ¶ 13. Rather, the court must determine, "under the unique circumstances of the particular juvenile," whether commitment to ADJC is appropriate. *Id.*

**¶11** Here, the juvenile court found Juvenile's commitment to ADJC was appropriate based upon his violent behaviors and the progressively serious nature of his offenses. Juvenile argues this was error because less restrictive alternatives — commitment to a secure residential treatment facility or placement with his father — existed. But the mere existence of a less restrictive alternative does not establish an abuse of discretion so long as the court "give[s] special consideration to . . . whether appropriate less restrictive alternatives to commitment exist." Ariz. Code Judicial Administration § 6-304(C)(1)(c); *see also Niky R.*, 203 Ariz. at 390, ¶ 19 ("[T]he [G]uidelines do not mandate that the less restrictive alternative be ordered.").

**¶12** The record reflects Juvenile's counsel argued for Juvenile to be placed either in a secure residential treatment facility or with his father in California. The State responded that, in addition to issues with funding Juvenile's placement at such a facility, (1) there was no psychiatric evaluation concluding a secure residential treatment facility was appropriate to address Juvenile's behavior, and (2) Juvenile chose not to participate in other services. Juvenile's mother added that Juvenile had had no recent contact with his father.[3]

**¶13** The juvenile court had all the relevant information before it, considered Juvenile's arguments in favor of alternate dispositions, and ultimately determined commitment to ADJC was appropriate. We will not second-guess its evaluation of the circumstances on appeal so long as the disposition is not grossly excessive. *Cf. State v. Becerra*, 111 Ariz. 538, 541

---

[3] Given this evidence supporting the juvenile court's decision not to place Juvenile in a secure residential treatment facility, we reject Juvenile's suggestion that "[t]he court only imposed ADJC because the state was unwilling to expend county funds for treatment." Accordingly, the record does not support Juvenile's claim that the court violated his constitutional rights by denying residential treatment solely on the basis of funding.

(1975) (finding no sentencing error when the trial court gave no explanation for declining to grant probation). Given the record evidence of Juvenile's violent behavior, disregard for the court-ordered terms of probation, and devolution into progressively more serious offenses, we find no abuse of discretion in the juvenile court's disposition order. *See, e.g.*, *JV-9404492*, 186 Ariz. at 238-39 (affirming a disposition order committing a juvenile to ADJC where the juvenile was a repeat offender and the JPO testified juvenile's "lack of commitment" made him an inappropriate candidate for less restrictive alternatives); *Amber S.*, 225 Ariz. at 368, ¶¶ 11-12 (noting the juvenile court "could have simply committed Juvenile to ADJC" after finding she had been unable to comply with "even nominal probation terms").

## CONCLUSION

¶14     The juvenile court's disposition order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA