NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE DELINQUENCY OF J.C.

No. 1 CA-JV 23-0144
FILED 12-21-2023

---

Appeal from the Superior Court in Maricopa County
No. JV207894
The Honorable Genene Dyer, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Christine A. Davis
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Anni Hill Foster joined.

---

**C A T T A N I**, Judge:

¶1        J.C. appeals the juvenile court's order requiring him to register as a sex offender until age 25.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In June 2022, after J.C. pleaded delinquent to two counts of child molestation, the juvenile court committed him to the Arizona Department of Juvenile Corrections ("ADJC").  The court deferred a decision on whether to require sex-offender registration.  In July 2023, after considering evidence and oral argument regarding registration, the court ordered J.C. to register as a sex offender.  J.C. timely appealed, and we have jurisdiction under A.R.S. § 8-235.

## DISCUSSION

¶3        The juvenile court may require a juvenile who has been found delinquent of certain offenses, including child molestation, to register as a sex offender until age 25.  A.R.S. § 13-3821(A)(7), (D).  We review a court's order requiring registration for an abuse of discretion, and in making that determination, we view the facts in the light most favorable to sustaining the ruling.  *See In re Javier B.*, 230 Ariz. 100, 104, ¶ 17 (App. 2012); *In re Amber S.*, 225 Ariz. 364, 366–67,  ¶ 6 (App. 2010).  An abuse of discretion may be established if the court's order is "characterized by capriciousness, arbitrariness or by failure to conduct an adequate investigation into facts necessary for an intelligent exercise of the court's sentencing power."  *State v. Grier*, 146 Ariz. 511, 515 (1985).

¶4        Here, J.C. contends that the court abused its discretion by ordering registration, asserting that there was insufficient evidence demonstrating that he is a danger to society or that the public would be protected by registration.  We disagree.

¶5        In April 2022, J.C. completed a psychosexual evaluation with Dr. Mogrovejo.  Dr. Mogrovejo's report indicated that J.C. showed no intention to change, had not cooperated with Sexual Maladaptive Behavioral Treatment, showed little remorse for his actions, and blamed his victims for his conduct.  Dr. Mogrovejo recommended inpatient treatment, and she concluded that J.C. was a risk to society.

¶6        In March 2023, ADJC's treatment update indicated that J.C. had been "reluctant to work on his deviant sexual arousal and minimize[d]

his offense," "struggle[d] completing his stages of accomplishment workbooks," and "appear[ed] fearful to take responsibility for his offense."

¶7 In May 2023, Dr. Leclerc completed a second psychosexual evaluation, noting that J.C. was not further along in treatment and was unlikely to make substantial progress before being released from ADJC in July. Dr. Leclerc recommended that J.C. be required to register and stated that, regardless of registration status, J.C. should continue treatment to "address his inappropriate sexual interest in females ages 6 to 13, his cognitive distortions supportive of sexually abusive behavior, and to develop an adequate relapse prevention plan."

¶8 In June, J.C.'s probation officer reported that ADJC's records indicated J.C. had been mostly compliant during the treatment process, with three rules violations between May and June: two for refusing to attend or participate in a required treatment program, and one for his room not being inspection ready.

¶9 Based on this evidence, and after hearing argument from counsel, the juvenile court ordered sex-offender registration, expressing concern about (1) J.C.'s significant regression in treatment, (2) reports indicating J.C.'s "lack of effort" toward treatment, (3) psychosexual evaluations noting J.C.'s sexually abusive behavior and lack of accountability, and (4) testing results suggesting J.C. was still attracted to young children. Citing public safety concerns and the lack of a relapse prevention program, the court ordered registration until age 25 based on "the totality of the circumstances."

¶10 J.C. contends that the court improperly relied on an "outdated," pre-treatment opinion—Dr. Leclerc's May 2023 psychosexual evaluation concerning J.C.'s risk to re-offend—and ignored J.C.'s more recent treatment history showing substantial compliance with treatment as he neared his July 2023 release. But the May 2023 evaluation was only months before his release and was clearly relevant to the "totality of the circumstances."

¶11 Moreover, the juvenile court relied on more than just Dr. Leclerc's evaluation. The court reviewed and considered J.C.'s treatment records covering more than a year, psychiatric progress notes, psychological reports, and intake assessments. There was sufficient evidence in the record to support the court's decision to order registration.

¶12 Finally, J.C. asserts the court ordered registration without knowing anything about future treatment, and that the court based its

decision on unsound reasoning and an inadequate investigation. But the court considered J.C.'s future treatment plans, voicing a concern about J.C.'s "lack of [a] relapse [prevention] plan." And, as detailed above, the overall record reflects a detailed investigation into J.C.'s mental health, as well as his treatment records.

**CONCLUSION**

¶13 The juvenile court did not abuse its discretion by ordering sex-offender registration until age 25. We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA