NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE DEPENDENCY AS TO L.S.

No. 1 CA-JV 26-0020

FILED 05-11-2026

---

Appeal from the Superior Court in Maricopa County
No. JD536732
The Honorable David J. Palmer, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm, PLLC, Queen Creek
By Steven Czop
*Counsel for Appellant Samuel S.*

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant Samantha A.*

Arizona Attorney General's Office, Phoenix
By Veronica F. Rios
*Counsel for Appellee DCS*

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

**P A T O N**, Judge:

¶1 Samantha A. ("Mother") and Samuel S. ("Father") (collectively, "Parents") appeal the juvenile court's order adjudicating their child, L.S. ("Child"), born in October 2024, dependent as to each parent. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2 On June 11, 2025, police responded to a call from Mother reporting that Father physically abused Child. When police arrived at Mother's home, Mother explained that she saw "scratches on [Child's] neck and redness on his ears" and that Father had locked her out of her home. She also reported that Father "struck her five times in the head" the previous day.

¶3 Over the next two months, DCS repeatedly attempted to conduct a wellness check on Child, but was unsuccessful due to Parents' lack of cooperation. During those two months, DCS also received a phone call from Mother's mother ("Grandmother") and Mother's neighbor expressing concerns of domestic abuse by Father against Mother.

¶4 In August 2025, DCS interviewed Mother's preteen daughter, B.P., who witnessed the domestic violence incident on June 11. B.P. explained that Father told Mother to take B.P. somewhere else so he could "beat [Mother] up." B.P. also said she heard Father physically assaulting Mother and saw scratches on Child's neck. She expressed fear of Father because he would regularly get angry and strangle Child when Child cried.

¶5 DCS took custody of Child in September 2025. A few days later, Mother visited the DCS office to ask about Child. DCS staff observed that Mother wore an ear bud and behaved strangely during the visit. DCS staff wrote two questions on a piece of paper asking Mother whether Father was talking to her in her ear bud and whether she felt safe at home. Mother responded "yes," but did not indicate which question she was answering.

¶6         At a subsequent Team Decision Meeting, Mother revealed that Father hit her earlier that morning for cooperating with DCS, injuring her lip and bruising her backside. She also expressed a desire for Father to be arrested and sought resources on how to escape her relationship. But two days later, she recanted her statements as to the alleged domestic violence and claimed she felt coerced by DCS to make those allegations against Father.

¶7         DCS filed a dependency petition as to each parent, alleging each was "unwilling or unable to provide proper and effective parental care and control due to" domestic violence and neglect. The juvenile court held a two-day dependency hearing in December 2025.

¶8         Before the hearing, Father moved to exclude statements made by B.P. during her interview with DCS as hearsay lacking sufficient indications of reliability. The juvenile court denied the motion and admitted the statements.

¶9         During the hearing, Mother and Father both claimed Grandmother's, B.P.'s, and Mother's reports of domestic violence by Father were unreliable. Mother claimed Grandmother "ha[d] issues with alcoholism" and was likely under the influence when she made her reports. Father described B.P. as "passive aggressive," vengeful, and generally untrustworthy, while describing their relationship as one that has grown "further and further apart." Mother also questioned B.P.'s credibility due to B.P.'s behavioral issues. As to her own reports, Mother testified that she lied when she reported the allegations of Father's domestic violence.

¶10         A DCS child safety specialist testified that Parents refused to participate in any services DCS recommended, other than visitation. He also explained the negative behavioral effects that witnessing domestic violence can have on a child, noting that Child had demonstrated those behaviors, such as biting and screaming, since being removed from Parents' custody.

¶11         On January 30, 2026, the court issued an "Under Advisement Ruling" adjudicating Child dependent as to both Mother and Father. As to Mother, the juvenile court found that Mother "has been unwilling and/or unable [to] provide proper and effective parental care and control due to acts of [d]omestic [v]iolence" in the home. The juvenile court also found that Mother "senselessly denies the existence of domestic violence in the home . . . failing to protect the child." As to Father, the juvenile court found

that Father failed "to protect [Child] against domestic violence committed by Father, to which [Child] has tragically been a witness and victim."

¶12            A few days later, DCS filed a proposed dependency order, which detailed specific evidence of domestic violence and Parents' inability to protect Child from domestic violence.  The court adopted the proposed order.  Mother and Father timely appealed.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Section 8-235(A).

## DISCUSSION

### I.      The juvenile court did not err in relying on DCS's proposed form of order to issue its dependency order.

¶13            Mother and Father argue the juvenile court erred in relying on a proposed form of order DCS filed instead of making its own factual findings.  They claim that because there is no mechanism in the juvenile rules for parties to submit a proposed form of order, the juvenile court was required to make independent findings.  We review the sufficiency of a juvenile court's findings of fact regarding dependency de novo as a mixed question of fact and law.  *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296, ¶ 14 (App. 2020).

¶14            When the juvenile court finds that a petitioner has proven the allegations in a dependency petition by a preponderance of the evidence, it must provide "specific facts that support a finding of dependency" in the form of "a signed minute entry or order."  Ariz. R.P. Juv. Ct. 338(h); *see also* A.R.S. § 8-844(C)(1)(a)(ii) (juvenile court must provide "[t]he factual basis for the dependency").  The juvenile court may rely on proposed orders to make its factual findings provided "those findings are consistent with the ones that it reaches independently after properly considering the facts."  *See Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990).  The adopted factual allegations must be reasonably supported by the evidence and be sufficient as a matter of law.  *See Francine C.*, 249 Ariz. at 299, ¶ 26.

¶15            The juvenile court's dependency order, which included DCS's proposed factual findings, sufficiently provided "specific facts that support a finding of dependency."  Ariz. R.P. Juv. Ct. 338(h)(4); A.R.S. § 8-844(C)(1)(a)(ii).  The juvenile court found Child dependent as to both Mother and Father because each parent was "unwilling or unable to provide proper and effective parental care and control due to" both neglect and domestic violence.  A.R.S. § 8-201(15)(i).  The order cited specific supporting evidence, including details of the June 11, 2025, incident, when Mother called the police to report domestic violence.  It also noted B.P.'s

4

statements that she heard Father physically assaulting Mother and saw scratch marks on Child's neck. It further found that Father continues to commit domestic violence against Mother and that Mother continues to deny any domestic violence within the household.

**¶16** These findings are both supported by the record and consistent with the findings the court reached independently in its Under Advisement Ruling. *See Francine C.*, 249 Ariz. at 299, ¶ 26; *Elliott*, 165 Ariz. at 134. In that ruling, the court found that Father committed acts of domestic violence against Mother and Child, Child was a witness and victim of those acts, and Mother denied the existence of domestic violence in the home. These facts are sufficient to support a dependency finding and are consistent with the adopted findings in the dependency order. *See Francine C.*, 249 Ariz. at 296, ¶ 14 (the juvenile court need not include every fact supporting its ruling but must include those essential to the conclusion).

**¶17** Parents also argue that some of the dependency order's findings regarding Parents' substance use are not supported by the record, so we should disregard all of its findings. Specifically, they point to the order's mention of Mother's history of methamphetamine use, Father's history of substance abuse, and Father's prior conviction for a marijuana related offense. Although there was evidence that both parents tested positive for marijuana during the proceedings, parents are correct that these specific findings are not supported by the record. The juvenile court's inclusion of these mistaken facts, however, does not negate its findings that Child was dependent due to domestic violence and neglect. Because ample evidence supports the court's findings of ongoing domestic violence and failure to adequately care for Child, we find no reversible error. *See Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 51, ¶ 16 (App. 2016) (finding "the substantiated and unresolved threat" of domestic violence supports a finding of dependency).

## II. The juvenile court did not err in admitting the DCS report containing B.P.'s statements.

**¶18** Father contends the juvenile court erred in admitting B.P.'s hearsay statements. We review the juvenile court's evidentiary rulings for an abuse of discretion and resulting prejudice. *Lohmeier v. Hammer*, 214 Ariz. 57, 60, ¶ 6 (App. 2006). We will not find an abuse of discretion unless the juvenile court's decision was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. City of Tucson*, 132 Ariz. 35, 37 (App. 1982).

¶19            In general, "[t]he Arizona Rules of Evidence apply in contested adjudication hearings in . . . dependency . . . proceedings, except as otherwise provided by law."  Ariz. R.P. Juv. Ct. 104(a).  Therefore, hearsay not fitting within any exclusion or exception is inadmissible.  Ariz. R. Evid. 802.  But in juvenile court proceedings, the "out-of-court statements of a minor regarding acts of neglect perpetrated on the minor are admissible for all purposes in any dependency proceeding if the time, content, and circumstances provide sufficient indication of its reliability."  A.R.S. § 8-237 (citation modified); *see also* Ariz. R.P. Juv. Ct. 104(c).

¶20            Father argues this exception does not apply to B.P.'s statements because B.P. was not the child who experienced acts of neglect or abuse, and that the time, content, and circumstances of her statements did not provide sufficient indicia of their reliability.  We disagree.  Neglect is "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision . . . if that inability or unwillingness causes substantial risk of harm to child's health or welfare."  A.R.S. § 8-201(25)(a).  Exposing a child to domestic violence fits within this definition.  *Cf. Shella H.*, 239 Ariz. at 51, ¶¶ 17-18 (affirming a dependency finding because the mother exposed her child to domestic violence, even though the child was not a victim of the domestic violence).  Because B.P.'s exposure to domestic violence constitutes neglect, her statements about the domestic violence she witnessed are statements "regarding acts of . . . neglect perpetrated on [her]."  Ariz. R.P. Juv. Ct. 104(c).

¶21            Father also asserts that B.P.'s statements were unreliable because she made her statements two months after the incident and had a poor relationship with Father.  But we give substantial deference to the juvenile court's findings on reliability.  *See Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023); *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82-83, ¶ 19 (App. 2005).  Moreover, other evidence corroborates B.P.'s statements.  Mother called police on June 11, 2025, and alleged domestic violence by Father and described scratch marks on Child's neck, consistent with B.P.'s statements.  On this record, the juvenile court did not abuse its discretion in determining that B.P.'s statements were sufficiently reliable to be admissible under Section 8-237.

¶22            Father also claims that the juvenile court erred by failing to state its reliability findings on the record.  He relies on *Francine C.*, 249 Ariz. at 289, to support his position.  His reliance is misplaced.  *Francine C.* held that the juvenile court must provide specific findings of fact to support its dependency order—as required by statute—but it does not extend this

requirement to specific evidentiary rulings. *See Francine C.*, 249 Ariz. at 298-99, ¶ 21.

**¶23**　　　Father alternatively argues that, even if B.P.'s statements were admissible, the DCS report containing her statements was inadmissible hearsay. When admissible hearsay statements are nested within a second layer of *inadmissible* hearsay, the statements may not be admitted. *See* Ariz. R. Evid. 805 (emphasis added). But the DCS report is not inadmissible hearsay. In dependency hearings, "the court must review a child safety worker's report and may admit the report into evidence if the worker . . . who prepared or approved the report [is] available for cross-examination." Ariz. R.P. Juv. Ct. 104(d)(2). Here, the DCS employee who prepared the report containing B.P.'s statements testified and was subject to cross-examination. The report was admissible under Rule 104(d)(2).

**¶24**　　　Father nonetheless argues that this was still error because the DCS employee who interviewed B.P. was not available for cross-examination. But the rule does not require that the employee who interviewed the minor be available for cross-examination, only the employee who authored or approved the report. Ariz. R.P. Juv. Ct. 104(d)(2). And Rule 104(d)(1) expressly provides that the report "may include any appendices or reports prepared by a person other than the child safety worker" who authored the report.

**¶25**　　　Accordingly, the juvenile court did not abuse its discretion in admitting B.P.'s statements. *See E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 60, ¶ 20 (App. 2015).

**III.　The juvenile court did not abuse its discretion in ordering DCS to make reasonable efforts to provide services to Mother.**

**¶26**　　　Mother argues that the juvenile court erred in entering its dependency order because the juvenile court did not order DCS to provide a specific service or make reasonable efforts to provide services to the parents. We review a juvenile court's dependency order for an abuse of discretion. *In re Amber S.*, 225 Ariz. 364, 367, ¶ 6 (App. 2010).

**¶27**　　　Arizona Rule of Procedure for the Juvenile Court 339(d)(1) requires the court, in a signed minute entry or order, to "order DCS to make reasonable efforts to provide services to the child and child's parent" if DCS is a party. The dependency order specifically ordered DCS to "make reasonable efforts to achieve the case plan." This suffices as an order for DCS to "make reasonable efforts" to provide services to Mother. Ariz. R.P. Juv. Ct. 339(d)(1). And during the disposition hearing, the parties discussed

numerous services that DCS offered Mother, including "Family Connections," "Nurturing Parenting Time," visitation, and domestic violence counseling. The court did not abuse its discretion.

## CONCLUSION

¶28   We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:   JR